UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

R&J DEVELOPMENT COMPANY, LLC, )
et al., )
 )
    Plaintiffs, )   Civil No. 11-47-ART
 )
v. )
 )
 )   **MEMORANDUM OPINION**
THE TRAVELERS PROPERTY )   **& ORDER**
CASUALTY COMPANY OF AMERICA, )
 )
    Defendant. )

\*\*\* \*\*\* \*\*\* \*\*\*

This case presents a single question of law: in a property insurance policy that excludes coverage for damage to a vacant property due to "vandalism," does "vandalism" include arson? Although the term "vandalism" is undefined, the language and structure of the policy make clear that "vandalism" does not include damage due to intentionally set fires. Therefore, the policyholders R&J and James Booth are entitled to coverage.

### BACKGROUND

R&J Development Company, LLC and its owner, James Booth (together, "R&J"), manage 115 residential and commercial rental properties in Kentucky, West Virginia, and Tennessee. R. 18-1 at 2–3; R. 19-1 at 1. One of the company's residential properties—a two-story house in Lovely, Kentucky—became vacant in July 2008 and stayed that way for the next two years. R. 19-12 at 3. Unfortunately, before R&J and Booth could find a tenant for this property, two fires broke out in the residence and severely damaged the property. *Id.* An independent expert, Matrix Investigation Group, later determined that the fires were acts

of arson by unknown third parties. *Id.*

R&J turned to its insurer, The Travelers Property Casualty Company of America, to protect them from this loss. After all, R&J's policy provided coverage for property damage due to "specified causes of loss," including "fire" and "vandalism." R. 18-3 at 54. Even though Travelers agreed that an intentionally set fire had caused the damage, Travelers' red umbrella stayed closed. *See* R. 18-4. R&J's policy excluded coverage for losses caused by "vandalism," among other things, to a property that was vacant for "more than 60 consecutive days" before the loss occurred. R. 18-3 at 56. According to Travelers, this vacancy exclusion applied because "vandalism" includes arson. R. 18-4 at 1.

Dissatisfied with that answer, R&J filed a declaratory judgment action against Travelers under Kentucky Revised Statute § 418.065 in Martin Circuit Court. R. 1-4 ¶¶ 4, 6. R&J sought a judgment declaring that it is entitled to coverage as well as an award of costs and attorney's fees. *Id.* at 3–4. After Travelers removed the case to federal court and discovery completed, both parties filed cross-motions for summary judgment. The parties do not disagree about any of the underlying facts, and they agree that arson was the cause of the damage to R&J's property. *See* R. 18-1 at 2; R. 19-1 at 2. Further, Travelers does not dispute that, absent the vacancy exclusion, the policy provides coverage for the damage to R&J's property. *See* R. 18-3 at 36 (agreeing to pay for "direct physical loss of or damage to Covered Property" that is caused by certain specified causes of loss); *id.* at 54 (including "fire," "smoke," and "vandalism," among other things, within the "specified causes of loss"). Travelers defends its denial of coverage solely on the ground that the exclusion for damage to a vacant property due to "vandalism" includes damage caused by arson.

## DISCUSSION

Courts confront a two-stage battle whenever they construe any legal text. The first stage—interpretation—requires identifying the meaning of the language at issue. The second stage—construction—entails applying the meaning to the particular set of facts in the case. Construction often requires courts to resolve difficult and sometimes intractable questions about how to apply vague words to borderline cases: What is the "tipping point" between an object with "normal" weight and one that is "heavy?" When does conduct transition from "reasonable" to "unreasonable?" And so on. *See* Caleb Nelson, Statutory Interpretation 78–80 (2011).

Unlike the vagueness problems that can plague the construction stage, determining whether the vacancy exclusion applies in this case involves resolving an ambiguity between two or more possible meanings at the interpretation stage. For example, words like "bank" can refer to a financial institution or to terrain along a body of water, and "light" can refer to color or weight.

A similar ambiguity exists here. R&J's policy provides coverage for damage due to "specified causes of loss," including "fire," "smoke," and "vandalism." R. 18-3 at 54. The policy's vacancy exclusion, however, precludes coverage for damage to a vacant property caused by "vandalism, sprinkler leakage, building glass breakage, water damage, theft, or attempted theft." R. 18-3 at 56. Does vandalism mean something broad like "all intentional property damage" or something narrower that excludes intentionally set fires? This question is a legal one for the Court to resolve because the facts are undisputed and the "only issue is whether the facts meet the policy definition." *State Auto. Mut. Ins. Co. v. Sec. Taxicab, Inc.*, 144 F. App'x 513, 517 (6th Cir. 2005) (citing *MGA Ins. Co. v. Glass*, 131 S.W.3d 775, 777

(Ky. Ct. App. 2004)). Despite Travelers' argument to the contrary, the term "vandalism" unambiguously excludes arson. R&J is therefore entitled to coverage.

The policy does not define the term "vandalism," and what the Sixth Circuit said more than twenty years ago remains true today: there is a "surprising dearth of Kentucky law construing the familiar vandalism and malicious mischief clause in property insurance policies." *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Travelers Ins. Co.*, 753 F.2d 533, 540 (6th Cir. 1985). But the policy at hand contains plenty of clues as to the meaning of vandalism. It lists "fire," "smoke," and "vandalism," among other things, as separate causes of loss. R. 18-3 at 54. The presumption against superfluity strongly suggests that each of these terms should have independent meaning. *See City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986); *cf.* John F. Manning & Matthew C. Stephenson, Legislation and Regulation 249 (2010) (explaining that this presumption "emphasizes that where possible each statutory term should be construed to have independent meaning (and therefore should mean something *different* than nearby terms)"). Indeed, in doling out coverage, the policy consistently treats "fire" and "vandalism" as distinct causes. *See, e.g.*, R. 18-3 at 44 (covering damage to personal property in transit that is caused by "fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism"); *id.* at 46 (covering damage due to collapse that is caused by "fire," but not by vandalism).

Further, Travelers does not identify any "general practice within the insurance industry" of treating arson as a form of vandalism. *SR Int'l. Bus. Ins. Co. v. World Trade Ctr. Props, LLC*, 467 F.3d 107, 139 (2d Cir. 2006). Quite the contrary: when property insurers want to exclude damage to vacant property caused by intentionally set fires, they do so expressly. *See, e.g.*, *Grange Mut. Cas. Co. v. DeMoonie*, 490 S.E.2d 451, 453 (Ga. Ct.

App. 1997) (involving a property insurance policy excluding damage to vacant homes caused by "vandalism or malicious mischief, *including intentionally set fires*" (emphasis added)). Likewise, when Travelers wanted to limit its coverage for other specified causes of loss to accidental occurrences, it did so expressly elsewhere in this policy. *E.g.*, R. 18-3 at 46 (providing coverage for building collapse caused by, among other things, "water damage, meaning accidental discharge of water or steam as the direct result of the breaking apart or cracking of a system or appliance containing water or steam"); *id.* at 54 (same for water damage); *id.* at 40 (limiting coverage for replacement of fire protective equipment that "discharges accidentally"); *id.* at 44 (limiting coverage from a vehicle collision and defining "collision" as "accidental contact" of a vehicle with another vehicle or object). By contrast, the policy does not distinguish between damage from accidental fires and damage from intentionally set fires. Indeed, the word "arson" does not appear anywhere in the policy. Travelers simply chose to insure against the risk of damage due to "fire"—whether accidental or intentional. Therefore, arson is an act contained within the class of damages caused by "fire"—not "vandalism."

The last clue in the policy is the list of causes of loss contained in the vacancy exclusion. Recall that the policy's vacancy exclusion precludes coverage for damage to a vacant property caused by "vandalism, sprinkler leakage, building glass breakage, water damage, theft, or attempted theft." R. 18-3 at 56. Because words are "social creatures" that "travel in packs," the company that an otherwise-ambiguous word keeps may shed light on that word's intended meaning. William N. Eskridge, Jr., et al., Legislation 852 (2007). Leaky sprinklers, broken glass, and stolen property all typically result in low-level, non-

5

structural damage. Here, this tool of interpretation—fancified by the Latin phrase *noscitur a sociis*—confirms that vandalism should be read to share the same feature as its confederates.

Most other courts construing policies agree either that "vandalism" unambiguously excludes arson or that the term is ambiguous and must be construed against the insurer.[1] Like the case at hand, all of these cases involve named-peril coverage that expressly distinguishes between "fire" and "vandalism."

Travelers also mobilizes an army of cases that interpret "vandalism" to include arson.[2] But this army involves nothing more than decoys that are easy cannon fodder for any sustained analysis. The policies at issue in these cases involved all-risk coverage that did not enumerate or otherwise distinguish among causes of loss like "fire" and "vandalism." Unlike the policy here, the structure and language of the policies in those cases did not indicate that "fire" and "vandalism" should have independent meaning. *See, e.g.*, *Bear River Mut. Ins. Co. v. Williams*, 153 P.3d 798, 801 (Utah Ct. App. 2006) (finding "no tension" with cases reaching the opposite conclusion because the all-risk policy at issue did not contain "the type of conflicting language that has led other courts to find coverage" for arson damage to vacant property).

---

[1] *See, e.g.*, *Bates v. Hartford Ins. Co. of Midwest*, 787 F. Supp. 2d 657, 663 (E.D. Mich. 2011); *Fort Lane Village LLC v. Travelers Indem. Co. of Am.*, 805 F. Supp. 2d 1236, 1241 (D. Utah 2011); *United Capital Corp. v. Travelers Indem. Co. of Ill.*, 237 F. Supp. 2d 270, 276–77 (E.D.N.Y 2002); *Nationwide Mut. Fire Ins. Co. v. Nationwide Furniture, Inc.*, 932 F. Supp. 655, 656 (E.D. Pa. 1996); *Johnson v. State Farm Fire & Cas. Co.*, 2008 WL 4724322, at *3 (Mich. Ct. App. Oct. 28, 2008) (unpublished); *Mut. Fire Ins. Co. of Calvert Cnty. v. Ackerman*, 872 A.2d 110, 118 (Md. Ct. Spec. App. 2005) ; *MDW Enters. v. CNA Ins. Co.*, 4 A.D.3d 338, 338–39 (N.Y. App. Div. 2004); *Am. States Ins. Co. v. Rancho San Marcos Props., LLC*, 97 P.3d 775, 779 (Wash. Ct. App. 2004); *Dixon v. Safeco Ins. Co. of America*, 2002 WL 31002848, at *3 (Wash. Ct. App. Sept. 6, 2002) (unpublished); *Tillman v. S. States Ins. Co.*, 325 S.E.2d 585, 585 (S.C. Ct. App. 1985).

[2] *See Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989); *Costabile v. Metro. Prop. & Cas. Ins. Co.*, 193 F. Supp. 2d 465, 478 (D. Conn. 2002); *Estes v. St. Paul Fire & Marine Ins. Co.*, 45 F. Supp. 2d 1227, 1229 (D. Kan. 1999); *Potomac Ins. Co. of Ill. v. NCUA a/k/a Nat'l Credit Union Ass'n.*, 1996 WL 396100, at *4 (N.D. Ill. July 12, 1996); *Bear River Mut. Ins. Co. v. Williams*, 153 P.3d 798, 801 (Utah Ct. App. 2006); *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1116 (N.M. 2006); *cf. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 753 F.2d at 540 (interpreting "vandalism and malicious mischief" to include toxic dumping of illegal chemicals because the policy expressly defined this phrase as "direct loss by willful and malicious damage to or destruction of property").

Relying on dictionaries and the Kentucky criminal code, *see* R. 19-1 at 6, Travelers claims that "vandalism" broadly refers to "any intentional damage to property," *see* R. 21 at 5. And just like vandalism, Travelers argues, arson is the willful destruction of another's property. The "medium of destruction"—fire—is irrelevant according to Travelers because "the end result"—vandalism—is "still the same." R. 19-1 at 6.

There are two problems with this argument. First, regardless of the breadth of definitions found elsewhere, the language of R&J's policy indicates that it was using a narrower definition. If the language and structure of a contract indicates that the term "color" does not include black (technically the absence of all color), then the Court could not override the parties' agreement with an external definition that includes black as a color. The same is true here.

Second, Travelers' approach would render part of the vacancy exclusion superfluous. If "vandalism" means "any intentional property damage" and the medium of destruction is irrelevant, then there is no need to include damage to "theft" or "attempted theft" in the vacancy exclusion. For instance, suppose that an individual breaks into a vacant property and steals a refrigerator. The process of dragging the refrigerator out to his waiting getaway truck rips the kitchen linoleum apart. Applying Travelers' approach here, the medium— theft—is irrelevant because the end result is the same—the intentional destruction of property, or "vandalism." Yet Kentucky courts have not adopted this approach in the context of interpreting "theft." *See Reynolds v. Travelers Indem. Co. of Am.*, 233 S.W.3d 197, 201 (Ky. App. 2007) ("While the home had been vacant for more than 30 consecutive days, the loss was clearly not caused by *vandalism or malicious mischief* as those terms are commonly understood. Instead, the Reynoldses' loss in this case was plainly caused by the *theft* of the

7

refrigerator."); *see also SR Int'l Bus. Co.*, 467 F.3d at 139 (refusing to interpret "vandalism and malicious mischief" to include terrorism even though terrorism involves intentional property damage).

Of course, the presumption against superfluous language is not absolute. *See, e.g.*, *United States v. Atl. Research Corp.*, 551 U.S. 128, 137 (2007) ("It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render the entire provision a nullity."); *Gutierrez v. Ada*, 528 U.S. 250, 258 (2000) ("But as one rule of construction among many, albeit an important one, the rule against redundancy does not necessarily have the strength to turn a tide of good cause to come out the other way."). Insurance policies, like all forms of communication, sometimes contain redundancies. *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010). So this presumption has limits: when faced with two ways to read the text, and the one that avoids surplusage makes the text ambiguous, "applying the rule against surplusage is, absent other indications, inappropriate." *Id.* at 578 (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004)). Here, however, applying the presumption corrects a superficial ambiguity in the term "vandalism" and does not create any ambiguity of its own. Moreover, Travelers offers no reason to jettison the presumption in this case to favor a superfluous interpretation.

Even if there is some force to the notion that specifically enumerated causes of loss, like "fire" and "vandalism," can overlap at the margins, ambiguity between a coverage provision and an exclusion must be resolved in favor of the insured. *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries*, Inc., 82 S.W.3d 869, 874 (Ky. 2002) (citing *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994)). Travelers has not shown that the term "vandalism" unambiguously includes intentionally set

fires. Consequently, R&J is entitled to coverage.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) The Defendant's motion for summary judgment, R. 19, is **DENIED**.

(2) The Plaintiffs' motion for summary judgment, R. 18, is **GRANTED**. Judgment is entered in favor of the Plaintiffs on all claims asserted in their complaint.

(3) The Clerk shall **STRIKE** this case from the Court's active docket.

(4) The Court will issue a separate Judgment contemporaneously with this Memorandum Opinion and Order.

This the 7th day of May, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge

9